1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KEVIN E.,[1]

                Plaintiff,

      v.

ANDREW SAUL, Commissioner of
Social Security Administration,

                Defendant.

Case No. 2:19-cv-09831-JC

MEMORANDUM OPINION

## I.    SUMMARY

On November 15, 2019, plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of his application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on plaintiff's motion for summary judgment ("Plaintiff's Motion") and defendant's memorandum in opposition ("Defendant's Mem.").  The Court has taken the parties' arguments under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order ¶ 5.

---

[1]Plaintiff's name is partially redacted to protect his privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3    ("ALJ") are supported by substantial evidence and are free from material error.

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5           **DECISION**

6    On October 8, 2015, plaintiff filed an application for Disability Insurance

7    Benefits, alleging disability beginning on December 30, 2010, due to neck, back,

8    and foot problems, as well as traumatic brain injury, post-traumatic stress disorder

9    (PTSD), and sleep apnea.  (See Administrative Record ("AR") 241-41, 318).  An

10   ALJ subsequently examined the medical record and heard testimony from plaintiff

11   (who was represented by counsel) and a vocational expert on August 16, 2018.

12   (AR 39-119).  On October 31, 2018, the ALJ determined that plaintiff had not been

13   disabled from the alleged onset date of December 30, 2010, to the date last insured,

14   September 30, 2016.  (AR 16-33).  Specifically, the ALJ found:  (1) plaintiff

15   suffered from the following severe impairments:  a mental impairment diagnosed to

16   include post-traumatic stress disorder and depressive disorder; degenerative disc

17   disease of the lumbar spine; status post right elbow arthroscopy; status post bilateral

18   hallux osteotomy; and degenerative joint disease of the left shoulder (AR 19);

19   (2) plaintiff's impairments, considered individually or in combination, did not meet

20   or medically equal a listed impairment (AR 22); (3) plaintiff retained the residual

21   functional capacity ("RFC") to perform a reduced range of light work[2] (20 C.F.R.

22   _____

23   [2]The ALJ specifically found that plaintiff had the following RFC:

24
     [Plaintiff can] perform light work . . . except he can no more than occasionally
25   climb ramps and stairs, and never climb ladders, ropes, or scaffolds.  [Plaintiff] can
     occasionally balance, stoop, kneel, crouch, but never crawl.  He can never work in
26   the presence of unprotected heights or hazardous machinery; he should not be
     required to operate a motor vehicle as part of the job duties.  [Plaintiff] is limited
27   to performing simple and routine tasks; he can use judgment required for simple
28                                                                      (continued...)

§§ 404.1567(b)) (AR 25); (4) plaintiff could not perform his past relevant work (AR 30); (5) plaintiff was capable of performing other jobs that existed in significant numbers in the national economy, specifically small products assembler, office helper, lens inserter, bench assembler or table worker, and preparer in the jewelry industry.  (AR 31-33); and (6) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely consistent with the medical evidence and other evidence in the record (AR 27-28).

On September 20, 2019, the Appeals Council denied plaintiff's application for review of the ALJ's decision.  (AR 1-3).

## III.    APPLICABLE LEGAL STANDARDS

### A.    Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905.  To be considered disabled, a claimant must have an impairment of such severity that he is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations.  See Stout

---

[2](...continued)
routine tasks and simple work-related decisions; he can deal with changes in the work setting that are required for simple work and work-related decisions. [Plaintiff] should have no more than occasional interaction with supervisors and co-workers and never work with the public.

(AR 25).

1   v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-

2   step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920).  The

3   claimant has the burden of proof at steps one through four – i.e., determination of

4   whether the claimant was engaging in substantial gainful activity (step 1), has a

5   sufficiently severe impairment (step 2), has an impairment or combination of

6   impairments that meets or medically equals one of the conditions listed in 20 C.F.R.

7   Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual

8   functional capacity to perform past relevant work (step 4).  Burch v. Barnhart, 400

9   F.3d 676, 679 (9th Cir. 2005) (citation omitted).  The Commissioner has the burden

10  of proof at step five – i.e., establishing that the claimant could perform other work in

11  the national economy.  Id.

12          **B.      Federal Court Review of Social Security Disability Decisions**

13          A federal court may set aside a denial of benefits only when the

14  Commissioner's "final decision" was "based on legal error or not supported by

15  substantial evidence in the record."  42 U.S.C. § 405(g); Trevizo v. Berryhill, 871

16  F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted).  The standard

17  of review in disability cases is "highly deferential."  Rounds v. Comm'r of Soc. Sec.

18  Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted).

19  Thus, an ALJ's decision must be upheld if the evidence could reasonably support

20  either affirming or reversing the decision.  Trevizo, 871 F.3d at 674-75 (citations

21  omitted).  Even when an ALJ's decision contains error, it must be affirmed if the

22  error was harmless.  See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090,

23  1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate

24  nondisability determination; or (2) ALJ's path may reasonably be discerned despite

25  the error) (citation and quotation marks omitted).

26          Substantial evidence is "such relevant evidence as a reasonable mind might

27  accept as adequate to support a conclusion."  Trevizo, 871 F.3d at 674 (defining

28  "substantial evidence" as "more than a mere scintilla, but less than a

1  preponderance") (citation and quotation marks omitted).  When determining

2  whether substantial evidence supports an ALJ's finding, a court "must consider the

3  entire record as a whole, weighing both the evidence that supports and the evidence

4  that detracts from the Commissioner's conclusion[.]"  Garrison v. Colvin, 759 F.3d

5  995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

6       Federal courts review only the reasoning the ALJ provided, and may not

7  affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."

8  Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need

9  not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's

10  reasoning "in a way that allows for meaningful review."  Brown-Hunter v. Colvin,

11  806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

12       A reviewing court may not conclude that an error was harmless based on

13  independent findings gleaned from the administrative record.  Brown-Hunter, 806

14  F.3d at 492 (citations omitted).  When a reviewing court cannot confidently

15  conclude that an error was harmless, a remand for additional investigation or

16  explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173

17  (9th Cir. 2015) (citations omitted).

18  **IV.  DISCUSSION**

19       Plaintiff solely challenges the ALJ's reliance on the vocational expert's

20  testimony at step five.    (Plaintiff's Motion at 13-21).  For the reasons stated below,

21  the Court concludes that a reversal or remand is not warranted.

22       **A.  Pertinent Law**

23       At step five, the Commissioner must prove that other work exists in

24  "significant numbers" in the national economy which could be done by an individual

25  with the same RFC, age, education, and work experience as the claimant.

26  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c),

27  416.920(a)(4)(v) & (g), 416.960(c); Heckler v. Campbell, 461 U.S. 458, 461-62

28  ///

5

1   (1983); see Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (describing legal

2   framework for step five) (citations omitted).

3          One way the Commissioner may satisfy this burden is by obtaining testimony

4   from an impartial vocational expert (alternatively, "VE") about the type of work

5   such a claimant is still able to perform, as well as the availability of related jobs in

6   the national economy.  See Gutierrez v. Colvin, 844 F.3d 804, 806-07 (9th Cir.

7   2016) (citation omitted); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001)

8   (citing Tackett, 180 F.3d at 1100-01).  When a vocational expert is consulted at step

9   five, the ALJ typically asks the vocational expert at the hearing to identify specific

10  examples of occupations that could be performed by a hypothetical individual with

11  the same characteristics as the claimant.  Zavalin, 778 F.3d at 846 (citations

12  omitted); Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012) (citations omitted).

13  The vocational expert's responsive testimony may constitute substantial evidence of

14  a claimant's ability to perform such sample occupations so long as the ALJ's

15  hypothetical question included all of the claimant's limitations supported by the

16  record.  See Hill, 698 F.3d at 1161-62 (citations omitted); Robbins v. Soc. Sec.

17  Admin., 466 F.3d 880, 886 (9th Cir. 2006) (citation omitted).

18         A vocational expert's testimony generally should be consistent with the

19  Dictionary of Occupational Titles ("DOT").[3]  See Lamear v. Berryhill, 865 F.3d

20  1201, 1205 (9th Cir. 2017) ("Presumably, the opinion of the VE would comport

21  with the DOT's guidance."); see generally Gutierrez, 844 F.3d at 807 (DOT "guides

22  the [ALJ's] analysis" at step five).  To the extent it is not – i.e., the VE's opinion

23

---

24         [3]The DOT, which is compiled by the U.S. Department of Labor, "details the specific
    requirements for different occupations," and is the Social Security Administration's "'primary
25  source of reliable job information' regarding jobs that exist in the national economy."  Gutierrez,
    844 F.3d at 807; Zavalin, 778 F.3d at 845-46 (citing Terry v. Sullivan, 903 F.2d 1273, 1276 (9th
26  Cir. 1990)); see also 20 C.F.R. §§ 404.1566(d)(1), 404.1569, 416.966, 416.969.  Neither the
    DOT nor a vocational expert's opinion, however, "automatically 'trumps'" where there is a
27  conflict.  Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007) (quoting Social Security
    Ruling 00-4p) (internal quotation marks omitted).
28

1  "conflicts with, or seems to conflict with" the DOT – an ALJ may not rely on the

2  VE's testimony to deny benefits at step five unless and until the ALJ has adequately

3  resolved any such conflict.  Gutierrez, 844 F.3d at 807 (citing Social Security Ruling

4  ("SSR") 00-4P, 2000 WL 1898704, at *2 (2000)); Rounds, 807 F.3d at 1003-04

5  (citations omitted); SSR 00-4p, 2000 WL 1898704, at *4 ("When vocational

6  evidence provided by a VE [ ] is not consistent with information in the DOT, the

7  [ALJ] must resolve [the] conflict before relying on the VE [ ] evidence to support a

8  determination or decision that the individual is or is not disabled.").  In each case

9  where vocational expert testimony is used, an ALJ generally must affirmatively

10      (1) ask the VE whether there is a conflict between the expert's

11      opinions and the DOT requirements for a particular occupation;

12      (2) "obtain a reasonable explanation for any apparent conflict"; and

13      (3) explain in the decision how the ALJ resolved any such conflict.

14  Massachi, 486 F.3d at 1152-53 (quoting SSR 00-4p).  An ALJ need only resolve

15  those conflicts that are "apparent or obvious."  Gutierrez, 844 F.3d at 807-08.  A

16  conflict is "apparent or obvious" only when vocational expert testimony is "at odds

17  with" DOT requirements that are "essential, integral, or expected" for a particular

18  occupation.  Id. at 808.

19      **B.    Analysis**

20      At the hearing, the ALJ posed to the vocational expert a hypothetical

21  containing all of plaintiff's functional limitations as found by the ALJ, which

22  plaintiff does not dispute.  (See AR 25, 97-98).  In response, the VE identified

23  several representative occupations that a person with these limitations could

24  perform.  (AR 98-100).  Plaintiff's counsel then engaged in lengthy cross-

25  examination regarding these occupations (see AR 100-18), and later submitted a

26  post-hearing brief disputing the vocational expert's testimony and requesting a

27  supplemental hearing to further examine the vocational expert (AR 431-35).  The

28  ALJ denied the request but discussed at least some of plaintiff's specific contentions

1  in the decision.  (AR 31-33).  The ALJ then relied on the vocational expert's

2  testimony to find plaintiff could perform the following representative jobs existing in

3  significant numbers in the national economy:

4        1      small products assembler (Dictionary of Occupational Titles

5               ("DOT") 706.684-022), about 80,000 jobs nationally;

6        2      office helper (DOT 239.567-010), about 75,000 jobs nationally;

7        3      lens inserter (DOT 713.687-026), about 20,000 jobs nationally;

8        4      bench assembler or table worker (DOT 739.687-182), about

9               10,000 jobs nationally;

10       5      preparer in the jewelry industry (DOT 700.687-062), about

11              10,000 jobs nationally.[4]

12  (AR 31-33).  Plaintiff argues that the vocational expert's testimony conflicts with

13  the DOT and other occupational sources in a variety of respects.[5]

14       Plaintiff contends, among other things, that the duties of a "small products

15  assembler" are inconsistent with his RFC limitation to only occasional interaction

16  with supervisors and coworkers.  (Plaintiff's Motion at 14).  At the hearing, as

17  plaintiff points out, the vocational expert acknowledged that the DOT defines this

18  job as involving "repetitive tasks *on [an] assembly line* to mass produce small

19  products."  (AR 106; see DOT 706.684-022) (emphasis added).  When counsel

20  asked if the vocational expert "consider[s] assembly line work . . . to require more

21  than occasional contact with supervisors and coworkers," the vocational expert

22  replied yes, "[e]specially in a production type occupation," though it "just depends

23

24       [4]The first two (small products assembler and office helper) are *light* unskilled jobs, while
    the latter three (lens inserter, bench assembler or table worker, and preparer in jewelry) are
25  described as *sedentary* unskilled jobs.  (AR 32-33, 98-100).

26       [5]Although some of the contentions raised by plaintiff here were not raised at the hearing,
27  plaintiff's counsel did raise them during administrative proceedings either in the post-hearing brief
    to the ALJ (AR 431-35) or a brief submitted later to the Appeals Council (AR 646-49).
28  Defendant does not argue that any issues raised here are waived.

1  on the company and the supervisor." (AR 104).  This suggests there may be, as

2  plaintiff argues, an unresolved conflict between the DOT's requirements of a small

3  products assembler and plaintiff's limitation to occasional interaction with

4  supervisors and coworkers.  However, any error on this point is harmless because

5  substantial evidence supports the ALJ's finding that plaintiff could perform several

6  other representative occupations existing in significant numbers in the national

7  economy.[6]  See Treichler, 775 F.3d at 1099 (ALJ error harmless if inconsequential

8  to the ultimate nondisability determination); Anna F. v. Saul, 2020 WL 7024924, at

9  *6 (C.D. Cal. Nov. 30, 2020) (ALJ error in accepting the VE's testimony about one

10 job that plaintiff could perform was harmless because substantial evidence

11 supported the ALJ's finding that plaintiff could perform other jobs in significant

12 numbers in the national economy).

13     Plaintiff also argues that the duties of an "office helper" conflict with his

14 RFC, which limits him to "performing simple and routine tasks," "us[ing] judgment

15 required for simple routine tasks and simple work-related decisions," and "deal[ing]

16 with changes in the work setting that are required for simple work and work-related

17 decisions."  (Plaintiff's Motion at 13-16; AR 25).  As the vocational expert

18 acknowledged, the DOT provides that office helpers must "perform[] a VARIETY

19 of duties," DOT 239.567-010, 1991 WL 672232, which the DOT's companion

20

21

22

23     [6]There is no bright-line rule as to what constitutes a "significant" number of jobs
   nationally, but any aggregate number over 25,000 clearly suffices.  See Gutierrez v. Comm'r of
24 Soc. Sec., 740 F.3d 519, 529 (9th Cir. 2014) (25,000 nationwide jobs significant, but a "close
   call"); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir.1995) (per curiam) (64,000 nationwide jobs
25 significant); Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002) (622,000 nationwide jobs
   significant); Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (125,000 nationwide jobs
26 significant); see also Beltran v. Astrue, 700 F.3d 386, 390 (9th Cir. 2012) (1,680 nationwide jobs
   insignificant); Anna F. v. Saul, 2020 WL 7024924, at *6 (C.D. Cal. Nov. 30, 2020) (21,100 jobs
27 in the national economy was significant number); Valencia v. Astrue, 2013 WL 1209353, at *18
28 (N.D. Cal. Mar. 25, 2013) (14,082 jobs in the national economy was not a significant number).

publication, Selected Characteristics of Occupations ("SCO"),[7] defines to include

"often changing from one task to another of a different nature without loss of

efficiency or composure." (AR 110; see AR 492). The vocational expert testified,

based on his own research, that the office helper job is "pretty routine with minimal

changes," and an office helper "can work on certain things for a period of time and

then move to another and so on and so on." (AR 110-11). Plaintiff contends that

the vocational expert's characterization of the job conflicts with the SCO

description. (Plaintiff's Motion at 16). However, as numerous courts in this Circuit

have concluded, the requirements of the office helper job are consistent with a

limitation to simple, routine, repetitive tasks, notwithstanding the job's requirement

of switching between a variety of tasks. See, e.g., Lyn B. v. Comm'r of Soc. Sec.,

2019 WL 1491174, at *8 (C.D. Cal. Apr. 3, 2019) ("limitation to simple, routine,

and repetitive tasks" did not conflict with office helper job's requirement of

"performing a variety of duties"); Jerome M. H. v. Berryhill, 2019 WL 994966, at

*2 (C.D. Cal. Feb. 7, 2019) (finding office helper position compatible with

limitation to simple repetitive tasks and noting plaintiff had "failed to demonstrate

why a person limited to simple repetitive tasks could not also frequently change

tasks"); Lewis v. Colvin, 2016 WL 397626, at *5 (E.D. Cal. Feb. 2, 2016), aff'd,

708 F. App'x 919 (9th Cir. 2018) (finding no conflict between plaintiff's limitation

to simple instructions or simple, repetitive tasks and performing a variety of job

duties as an office helper). Plaintiff has therefore failed to identify any material

conflict between the DOT and the vocational expert's testimony that a person who

is limited to simple, routine tasks and can handle "changes in the work setting that

---

[7]The ALJ is required to resolve conflicts with this companion publication as well as the
DOT. See SSR 00-4p (stating that adjudicators must "[i]dentify and obtain a reasonable
explanation for any conflicts between occupational evidence provided by VEs ... and information
in the [DOT], including its companion publication, the Selected Characteristics of Occupations
Defined in the Revised Dictionary of Occupational Titles (SCO)").

1  are required for simple work and work-related decisions" can nonetheless perform
2  the duties of an office helper.
3      Plaintiff additionally disputes whether some of the jobs at issue – specifically,
4  small products assembler, preparer, lens inserter, and table worker –  properly
5  qualify as "unskilled."  (Plaintiff's Motion at 16-17).  Plaintiff asserts that,
6  according to the Occupational Outlook Handbook ("OOH"), these jobs are broadly
7  categorized as occupations requiring "moderate-term on-the-job-training," defined
8  as "more than one month and up to 12 months of on-the-job experience and informal
9  training," whereas the Social Security regulations define "unskilled" jobs as those
10 that "a person can usually learn to do the job in 30 days, and little specific
11 vocational preparation and judgment are needed."  (Plaintiff's Motion at 16-17; AR
12 529, 531, 606, 608; 20 C.F.R. § 416.968(a)).  However, even if the vocational
13 expert's testimony conflicted with the OOH on this point, the testimony was directly
14 consistent with the DOT, which lists each of the occupations as SVP Level 2,
15 equivalent to unskilled work.  See SSR 00-4P, 2000 WL 1898704, at *3 ("The DOT
16 lists a specific vocational preparation (SVP) time for each described occupation.
17 Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work
18 corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and
19 skilled work corresponds to an SVP of 5-9 in the DOT").  The ALJ thus properly
20 relied on the VE's testimony and was not required to resolve any purported conflict
21 with the OOH.  See Vizcarra v. Berryhill, 2018 WL 1684315, at *3 (C.D. Cal. Apr.
22 5, 2018) (ALJ not required to resolve discrepancy between vocational expert's
23 testimony and OOH as to whether jobs qualified as unskilled), aff'd, __ F. App'x __
24 (9th Cir. Jan. 13, 2021); Markell v. Berryhill, 2017 WL 6316825, at *11 (N.D. Cal.
25 Dec. 11, 2017) (same).
26     Plaintiff's remaining arguments all challenge the vocational expert's job
27 numbers, which plaintiff argues are unreliable and in conflict with various non-DOT
28 sources, such as County Business Patterns, the OOH, O*NET OnLine, Job Browser

1    Pro, and the Occupational Requirements Survey.  (Plaintiff's Motion at 16, 18-21).

2    However, as numerous courts in this Circuit have concluded, a lay assessment of

3    data from these sources fails to undermine the reliability of the vocational expert's

4    testimony.  See, e.g., Selia R. v. Saul, 2020 WL 3620228, at *14 (E.D. Wash. Apr.

5    27, 2020) ("[C]ourts in this circuit considering similar arguments have found that lay

6    assessment of raw data does not rebut a vocational expert's opinion."); David G. v.

7    Saul, 2020 WL 1184434, at *5 (C.D. Cal. Mar. 11, 2020) ("Plaintiff's subjective

8    lay assessment of the data [from various non-DOT sources] is insufficient to

9    undermine the VE's analysis."); Paredes Ruiz v. Saul, 2020 WL 528846, at *4

10   (E.D. Cal. Feb. 3, 2020) ("Plaintiff's effort to undermine the reliability of the VE's

11   testimony through her own lay assessment of vocational information and job data

12   [from County Business Patterns and the OOH]  is unavailing."), appeal docketed,

13   No. 20-15286 (9th Cir. Feb. 21, 2020); Jose Alfredo G. v. Saul, 2019 WL 6652086,

14   at *6 (S.D. Cal. Dec. 5, 2019) ("Plaintiff merely presents a lay interpretation of the

15   alternative OOH and O*NET data.  Lay assessments alone are insufficient to

16   undermine the VE's analysis; such attempts have been 'uniformly rejected by

17   numerous courts.'") (quoting Merryflorian v. Astrue, 2013 WL 4783069, at *5

18   (S.D. Cal. Sept. 6, 2013)); Kimberly P. v. Saul, 2019 WL 4736975, at *5 (C.D. Cal.

19   Sept. 26, 2019) ("Here, plaintiff offers nothing more than raw data from Job

20   Browser Pro, with no expert explanation of the numbers in the report. . . .  [A]bsent

21   expert testimony interpreting the raw data submitted, it fails to undermine the VE's

22   expert testimony."); Shaibi v. Saul, 2019 WL 3530388, at *7 (E.D. Cal. Aug. 2,

23   2019) ("[C]ounsel's lay assessment of the data derived from the [OOH] and Job

24   Browser Pro does not undermine the reliability of the vocational expert's testimony.

25   Counsel has not offered any expert opinion interpreting data from these or other

26   sources to undercut the VE's analysis."); Kirby v. Berryhill, 2018 WL 4927107, at

27   *5 (C.D. Cal. Oct. 10, 2018) ("[C]ounsel's lay assessment of the data derived from

28   the OOH and Job Browser Pro does not undermine the reliability of the vocational

1  expert's testimony."), appeal docketed, No. 18-56511 (9th Cir. Nov. 9, 2018);

2  Colbert v. Berryhill, 2018 WL 1187549, at *5 (C.D. Cal. Mar. 7, 2018) (ALJ

3  properly relied on vocational expert testimony regarding job numbers where

4  claimant argued that the expert's numbers were inflated based on Job Browser Pro

5  estimates; noting that Job Browser Pro is not a source listed in 20 C.F.R. §

6  416.966(d), and the data therefrom served only to show that evidence can be

7  interpreted in different ways).

8         Plaintiff fails to show that the ALJ erred by not specifically addressing

9  contentions regarding the job numbers based on these non-DOT sources. See Ruby

10  V. v. Saul, 2020 WL 2307237, at *6 (C.D. Cal. May 8, 2020) (ALJ properly relied

11  on vocational expert testimony and had no obligation to address asserted job

12  number conflicts with non-DOT sources raised in post-hearing submissions), appeal

13  docketed, No. 20-55586 (9th Cir. June 8, 2020).  Instead, the ALJ reasonably relied

14  on the vocational expert's testimony regarding job numbers at step five, which alone

15  constitutes substantial evidence.  See Ford v. Saul, 950 F.3d 1141, 1160 (9th Cir.

16  2020) ("Given its inherent reliability, a qualified vocational expert's testimony as to

17  the number of jobs existing in the national economy that a claimant can perform is

18  ordinarily sufficient by itself to support an ALJ's step-five finding.") (citations

19  omitted); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ may

20  take administrative notice of any reliable job information, including information

21  provided by a VE.  A VE's recognized expertise provides the necessary foundation

22  for his or her testimony.  Thus, no additional foundation is required.") (citing

23  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).  Plaintiff's evidence

24  arguably suggesting an alternative number of available jobs does not warrant

25  remand.  See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the

26  evidence is susceptible to more than one rational interpretation, one of which

27  supports the ALJ's decision, the ALJ's conclusion must be upheld."); see also

28  Gardner v. Colvin, 2013 WL 781984, at *3 (C.D. Cal. Mar. 1, 2013) (finding no

1   basis for remand where claimant presented evidence sufficient to support an

2   alternative finding regarding the number of relevant jobs available in the economy).

3          Accordingly, plaintiff fails to demonstrate any material error in the ALJ's

4   conclusion that plaintiff is capable of performing the duties of jobs existing in

5   significant numbers in the national economy, and is therefore not disabled.

6   **V.      CONCLUSION**

7          For the foregoing reasons, the decision of the Commissioner of Social

8   Security is AFFIRMED.

9          LET JUDGMENT BE ENTERED ACCORDINGLY.

10  DATED:  January 14, 2021

11                                      _____/s/_____

12                                      Honorable Jacqueline Chooljian
                                        UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28